UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

RICHARD J. BAKER and                                            Chapter 7
AMANDA L. BAKER,                                                Case No.: 08-62748

                              Debtors.
_____

In Re:

JAMES C. COLLINS, ESQ., CHAPTER 7 TRUSTEE,     Adv. Pro. No.: 10-80055

                              Plaintiff,

vs.

JEANNE ANGELL,

                              Defendant.
_____

APPEARANCES:

THE CROSSMORE LAW OFFICE                            *Edward Y. Crossmore, Esq.*
*Attorneys for Plaintiff*
115 West Green Street
Ithaca, New York 14850

JAMES G. CUSHMAN, ESQ.
*Attorney for Defendant*
The Eaton Center
15 Eaton Avenue
Norwich, New York 13815

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

       This matter came before the Court upon a motion by James C. Collins, Esq., Chapter 7 Trustee ("Trustee" or "Plaintiff") for an order granting him summary judgment on his two-count adversary complaint against Jeanne Angell ("Defendant") seeking to exercise his avoidance powers under 11 U.S.C. §§ 544(a)(1) and 547(b) to challenge the security interest of Defendant

and consequently recover from Defendant, as an alleged preferential transfer, the net proceeds from the pre-petition auction sale of certain dairy cows formerly belonging to the herd of Richard and Amanda Baker ("Debtors").[1]  (*See* Pl.'s Mot. Summ. J., ECF Adv. No. 13; Trustee's Compl. for J. Against Def. Jeanne Angell to Require Turnover of Property of Case and Avoid Preferential Transfer and Compel Turnover of Funds, ECF Adv. No. 1.)  For the reasons that follow, the Court finds Trustee's arguments unpersuasive and holds that Trustee may not avoid Defendant's perfected security interest.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), and (b)(2)(H) and (K).

## FACTS

As required by Local Bankruptcy Rule 7056-1, Trustee filed his statement of undisputed material facts on July 22, 2011 (the "Statement," ECF Adv. No. 15), and Defendant filed a response on August 16, 2011 (ECF Adv. No. 17), therein indicating that she was substantially in agreement with the same.  Further, in compliance with this Court's directive at a hearing on the motion held during the Court's regular motion calendar in Binghamton, New York on August 25, 2011, the parties filed a Stipulation narrowing the dispute to whether Defendant is entitled to retain the proceeds derived from the sale of sixteen cows. (Stipulation ¶¶ 1–2, ECF Adv. No. 20.)

---

[1] Although Trustee's motion references only the 11 U.S.C. § 547(b) claim, which is count two of the adversary complaint, the Court treats the motion as one for summary judgment consistent with its title rather than as one for partial summary judgment because the identical issue is determinative as to both claims, i.e., whether Defendant's financing statement was flawed so as to make Defendant's interest unenforceable or unperfected under Article 9 of the New York Uniform Commercial Code as of the petition date. Moreover, the parties have narrowly framed the issue before the Court using the hypothetical lien creditor rhetoric of 11 U.S.C. § 544(a)(1).  Accordingly, it is appropriate for the Court to consider both causes of action and, in so doing, to wholly decide this adversary proceeding.

Accordingly, the following recitation sets forth only those facts essential to the Court's ruling:

1. On November 12, 2008, Debtors filed a Chapter 7 petition. (Statement ¶ 1.)

2. Prior to filing for bankruptcy relief, Debtors owned and operated a dairy farm having a herd of approximately ninety cows. (Statement ¶ 3.)

3. On or about September 18, 2008, Debtors engaged Burton Livestock Auction ("Burton Livestock") to auction eighty cows belonging to their herd. (Statement ¶ 4.)

4. On or about September 18, 2008, Defendant received a check in the amount of $27,764.20 from Burton Livestock representing the net proceeds of twenty-two cows from the auction sale of the Baker herd. (Statement ¶ 5.)

5. Defendant is a creditor in Debtors' Chapter 7 case, having filed a secured Proof of Claim in the amount of $55,787.54 on January 29, 2009, which was docketed on the Official Claims Register as Claim 7-1 (the "Claim"). This Claim represents the unpaid balance of the purchase price of cows sold by Defendant to Debtors in 2006. (Statement ¶¶ 7, 14.)

6. Although the sale transaction occurred in 2006, it was not until August 10, 2008 that Defendant delivered to Debtors a Bill of Sale. In exchange for said Bill of Sale, Debtors contemporaneously executed and delivered to Defendant a Security Agreement granting a security interest in fifty-eight cows, each identified by name and an ear tag designation (the "2008 Security Agreement"). On August 13, 2008, Defendant filed a UCC-1 Financing Statement ("2008 UCC-1") containing the same

collateral description as that found in the 2008 Security Agreement. (Statement ¶¶ 20–22.)

7. Debtor claims entitlement to nearly all funds received from Burton Livestock on the basis of the 2008 Security Agreement and the 2008 UCC-1. (Statement ¶ 10.)

8. Defendant concedes that two cows for which she was paid by Burton Livestock are not subject to her security interest. (Stipulation ¶ 1.)

9. Trustee concedes that Defendant has a validly perfected security interest by virtue of the 2008 UCC-1 for four cows whose ear tag identification numbers matched those included on the same. (Stipulation ¶ 2.)

10. When Defendant sold the cows to Debtors, she delivered to Debtors a Certificate of Registration ("Certificate") issued by Holstein Association USA, Inc. for each cow. (Statement ¶¶ 15–16.)

11. Each Certificate obtained by the Trustee in connection with this adversary proceeding includes the name of the cow, identification of Defendant as the former owner, a handwritten vaccination number in the top left corner, and a sketch of the cow showing its distinctive markings on the reverse side. Certain Certificates additionally include a handwritten ear tag identification number in the top right corner. (*See* Crossmore Aff. in Supp. of Summ. J. ¶ 40, Ex. L, ECF Adv. No. 13.)

12. Mr. Baker kept the Certificates that he obtained from Defendant in a folder and removed certain Certificates from the folder as cows were culled from the herd. (Statement ¶ 17.)

13. Mr. Baker delivered the folder with the remaining Certificates to Burton Livestock at the time of auction. (Statement ¶ 18.)

14. Burton Livestock identified the said twenty cows as belonging to Defendant's account by matching those cows to diagrams contained on the reverse side of the applicable Certificate for each cow. (Statement ¶ 19.)

15. Of the sixteen cows now at the center of this dispute, at the time Debtors turned them over to Burton Livestock for auction, ten did not have ear tags and six had ear tag identification numbers that did not match any of the ear tag identification numbers listed in the 2008 UCC-1. Of those six, only four of those ear tag identification numbers matched ear tag identification numbers on the Certificates. (Stipulation ¶¶ 3–5.)

## ARGUMENTS

Trustee acknowledges that if Defendant had a perfected security interest in the sixteen cows at issue ninety-one days prior to Debtors' bankruptcy filing, then that perfected security interest continued in the sale proceeds distributed to Defendant by Burton Livestock and, consequently, such distribution would not constitute a preference to her. (Pl.'s Mem. in Supp. of Summ. J. 3, ECF Adv. No. 14.) Trustee argues, however, that the collateral description contained in the 2008 UCC-1 was so misleading as to render the 2008 UCC-1 ineffective under New York Uniform Commercial Code Section 9-506(a). (*Id.* 8 (citing N.Y. U.C.C. § 9-506(a) (CONSOL. 2011))).

While recognizing that the UCC filing is meant to provide mere inquiry notice to serve as a starting point for further investigation by a third party seeking to distinguish between liened collateral and other, similar goods that the debtor owns (*Id.* 8 (ctting cases)), Trustee's position is that too much specificity can be fatal where the identification numbers included in the UCC-1 collateral description are substantially at variance with the actual identification numbers affixed

to the collateral at a later, controlling date. Citing only case law addressing collateral descriptions for equipment and automobiles, Trustee submits that this "rule of law [regarding misidentification] is clear." (Trustee's Reply Mem. 2, ECF Adv. No. 19.) Applying this rule to the facts at hand, Trustee argues that Defendant's collateral description is misleading because "[b]y electing to identify the cows through specific ear tag designations, a potential searcher would reasonably conclude that cows with completely non-matching ear tag designations or cows with no ear tags are not intended to be subject to [Defendant's] security interest." (*Id.* 11.) Trustee further contends that Defendant "performed no due diligence as to whether the ear tag information on her [2008] Security Agreement and [2008] UCC-1 matched the facts of the Baker herd as it existed in August of 2008" when the cows were sold by Burton Livestock. (*Id.* 12.)

Defendant submits that the collateral description utilized in the 2008 UCC-1 is sufficient under New York Uniform Commercial Code § 9-108(a) because it "reasonably identifies what is described" (Cushman Aff. in Opp'n to Mot. Summ. J. ¶ 16, ECF Adv. No. 16 (quoting N.Y. U.C.C. § 9-506(a) (CONSOL. 2011))), and the identity of the liened collateral is objectively determinable through the well-known method of matching cows to their Certificates (*id.* ¶ 18).

In reply to Defendant's reliance upon custom and practice in the dairy farm industry where it is common to name each cow and the fragility of the ear tag method of identifying a particular cow is well known (*id.* ¶¶ 14–14), Trustee submits that Defendant has failed to provide authority and he is aware of none that would bind Trustee as a hypothetical lien creditor by the identification information in the Certificates (Trustee's Reply Mem. 3). Because there is no mention of the Certificates in either the 2008 Security Agreement or the 2008 UCC-1, notwithstanding that the UCC-1 was filed just ninety-one days prior to Debtors' bankruptcy filing, Trustee argues that a hypothetical lien creditor would not be charged with knowing that

the Certificates exist or with knowledge of the contents thereof. (*Id.*) Finally, Trustee asserts that custom and usage may not be used to impose a duty upon a hypothetical lien creditor to contact a debtor or prior creditor in search of documents that are not referenced in the UCC-1. (*Id.* 4.)

## DISCUSSION

Summary judgment is proper if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. Further, provided certain procedural protections are complied with, the court may independently grant summary judgment for the nonmovant in the absence of a motion or cross motion. FED. R. BANKR. P. 7056(f)(1).

The substantive law determines which facts are material. "The sufficiency of the description of collateral [at issue here] is, of course, a matter governed by state law." *North Arkansas Med. Center v. Barrett*, 1990 U.S. Dist. LEXIS 19330, *36 (W.D. Ark. May 4, 1990). Trustee's motion depends upon agreed facts. As recognized by the parties, the only question is whether those facts include a sufficient collateral description so as to properly perfect Defendant's interest in the sixteen cows and thereby prevent Trustee from exercising his strong-arm power under 11 U.S.C. § 544(a)(1) or his avoidance power under 11 U.S.C. § 547(b). Accordingly, it is clear that one of the two parties is entitled to judgment under the present posture of this adversary proceeding.

Notwithstanding the prevalence of family farmer filings in the Utica Division, this adversary proceeding raises a question of first impression for this Court: exactly how does one properly perfect a security interest in specific cows? Under New York law, perfection in this instance occurs by filing a financing statement that sufficiently indicates the collateral covered

by the security interest. *See* N.Y. U.C.C. §§ 9-310(a), 9-502(a)(3). A financing statement does so if it provides a description of the collateral pursuant to New York Uniform Commercial Code § 9-108. N.Y. U.C.C. § 9-504. New York Uniform Commercial Code § 9-108 in turn states that a "description of personal . . . property is sufficient, whether or not it is specific, it if reasonably identifies what is described" such that the "identity of the collateral is objectively determinable." N.Y. U.C.C. § 9-108. "[A]s a rule, what is required to be filed as a financing statement is only a simple record providing a limited amount of information." 95 N.Y. Jur. Secured Transactions § 192 (2011) (citing Official Comment 2 to N.Y. U.C.C. § 9-502)). "Generally, a financing statement sufficiently indicates collateral claimed to be covered by if it satisfies the purpose of conditioning perfection on the filing of a financing statement, i.e., if it provides notice that a person may have a security interest in the collateral claimed." *Id.* § 212. Thus, the theory underpinning the financing statement is one of inquiry notice, and the test is one of reasonable identification, which this Court must now construe in practice.

Neither the Court nor the parties unearthed New York case law directly on point to address the sufficiency of a collateral description in a financing statement (or a security agreement for that matter) similar to the one utilized by Defendant when the collateral at issue is cows. Because Revised Article 9 has been universally enacted, 1-10 Debtor-Creditor Law § 10.02[1][a] (MB) (2012) (noting that every state has enacted UCC Article 9), the Court has as its starting point reviewed case law from other jurisdictions applying the "reasonably identified" standard in the context of security agreements covering livestock. In Vermont, for example, "it is customary for a creditor taking a security interest in cows to reflect the tag numbers of the animals on the security agreement." *In re Barrup*, 37 B.R. 697, 700 (Bankr. D. Vt. 1983). In Wisconsin, "cattle described by erroneous ear tag number have been held to be 'reasonably

identified' in a security agreement description.'" *United States v. Fullpail Cattle Sales, Inc.*, 640 F. Supp. 976, (E.D. Wis. 1986) (citation omitted) (recognizing that the "reasonably identified" standard is a liberal one).  It appears, therefore, that the courts that have considered the sufficiency of descriptions utilizing in whole or in part ear tag identification numbers for the purpose of creating a security interest have found such descriptions to be sufficient.  Further, at least one court has found that "[c]attle described by erroneous ear tag number [were] 'reasonably identified' in a security agreement description." *Id.* (citing *In re Reiser*, 20 U.C.C. Rep. Serv. 529, 530–31) (W.D. Wis. 1976)).  Although the question here is one of perfection rather than creation, the Court believes this distinction to be inconsequential since New York Uniform Commercial Code § 9-108 applies to both acts.  Further, security agreements are subject to heightened scrutiny and yet courts have recognized the validity and sufficiency of ear tag designations within collateral descriptions therein.  The present facts are undeniably more complicated, however, such that it does little good to acknowledge the propriety of Defendant's practice of using ear tag designations in the first instance.  As Trustee has correctly stated, the ear tag designations utilized in the 2008 UCC-1 for the sixteen cows at issue were of absolutely no use– of the six cows that had ear tag identification numbers, none of those numbers were a match to the ones contained in the 2008 UCC-1.

Accordingly, the Court's ruling turns on whether the financing statement was sufficient to alert a hypothetical lien creditor or third party to Defendant's claim to the sixteen cows.  On this point, the Court agrees with Defendant that custom in the farming industry is relevant.  The general rule of construction contained in the governing statutory body in fact contemplates the same:

    (1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.

    (2) Underlying purposes and policies of this Act are:

        (a) to simplify, clarify and modernize the law governing commercial transactions;

        (b) to permit the continued expansion of commercial practices through *custom, usage and agreement* of the parties; and

        (c) to make uniform the law among various jurisdictions.

N.Y. U.C.C. § 9-102(1)–(2) (emphasis added).

"A financing statement imposes a duty on third parties to inquire of the parties concerned to learn the identity of specific property covered, and thus to charge the third party with knowledge of whatever facts a reasonable inquiry would have revealed." Richard C. Tinney, Annotation, *Sufficiency of Description of Collateral in Financing Statement Under U.C.C. §§ 9-110 and 9-402*, 100 A.L.R. 3d 10 (2011) (citing cases applying New York law); *accord*, *e.g.*, *Allis-Chalmers Credit Corp. v. Bank of Utica*, 110 Misc.2d 283, 285 (N.Y. Sup. Ct. 1981) (collecting cases). Trustee submits that the collateral in this case was described with such particularity that no further inquiry would have been required of a third party. Given the character of the collateral at issue and the almost certain loss of ear tags, the Court is unconvinced. At a minimum, the third party would have been placed on notice that Defendant claimed a security interest in a certain number of cows. Cows are not fungible; they are identifiable by a number of methods, including ear tag designation, breed, lot number, brand, unique permanent markings, and/or registration certificate.

While Defendant's use of the ear tag identification numbers was, as of the time of filing, inaccurate, both the Certificates and the UCC-1 included the name of each cow in addition to an

ear tag designation. Given this information, Debtors, Defendant, and/or a third party would have been able to readily and easily ascertain which cows were covered by Defendant's security interest. Burton Livestock, with the aid of the Certificates, did just that by comparing the names on the 2008 UCC-1 to the names and diagrams on the respective Certificate for each cow. Accordingly, Defendant's 2008 UCC-1 was effective to perfect Defendant's secured interest in the sixteen cows, irrespective of the erroneous or outdated ear tag designations.

## CONCLUSION

Defendant's 2008 UCC-1 reasonably identified the sixteen cows and the use of erroneous or non-existent ear tag designations was immaterial and, as such, did not render the collateral description contained in the 2008 UCC-1 insufficient or seriously misleading under the circumstances. Thus, Defendant's security interest is deemed to have been perfected as a matter of law. In light of the same, it cannot be avoided. Based on the foregoing, Trustee's motion for summary judgment is hereby denied. Further, under the particular facts and circumstances of this case where the parties stipulated to the facts and issue to be decided and Trustee was afforded notice and an opportunity to present his best case, without the need for further evidence, summary judgment is hereby granted in favor of Defendant as to both counts of Trustee's adversary complaint.

IT IS SO ORDERED.

Dated at Utica, New York
this 29th day of February 2012

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge